IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PFIZER INC., WARNER-LAMBERT COMPANY LLC and PF PRISM IMB B.V., <br><br> Plaintiffs, <br><br> v. <br><br> QILU PHARMACEUTICAL CO., LTD. and QILU PHARMA, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. _____ <br> ) <br> ) <br> ) <br> ) <br> ) |

## **COMPLAINT**

Plaintiffs Pfizer Inc.; Warner-Lambert Company LLC; and PF PRISM IMB B.V. (collectively, "Pfizer") file this Complaint for patent infringement against Qilu Pharmaceutical Co., Ltd. and Qilu Pharma, Inc. (collectively, "Qilu"), and by their attorneys, hereby alleges as follows:

1.      This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code, and for a declaratory judgment of patent infringement under 28 U.S.C. §§ 2201 and 2202 and the patent laws of the United States, Title 35, United States Code, that arises out of Qilu's submission of an Abbreviated New Drug Application ("ANDA") to the U.S. Food and Drug Administration ("FDA") seeking approval to commercially manufacture, use, offer for sale, sell, and/or import generic versions of IBRANCE® (palbociclib) capsules, 75 mg, 100 mg, and 125 mg, prior to the expiration of U.S. Patent No. 10,723,730 ("the '730 patent").

2.      Qilu notified Pfizer by letter dated May 26, 2021 ("Qilu's Notice Letter") that it had submitted to the FDA ANDA No. 213093 ("Qilu's ANDA"), seeking approval from the FDA to engage in the commercial manufacture, use, and/or sale of generic palbociclib capsules, 75 mg, 100 mg, and 125 mg ("Qilu's ANDA Products") prior to the expiration of the '730 patent.

**PARTIES**

3.      Plaintiff Pfizer Inc. is a corporation organized and existing under the laws of the State of Delaware and having a place of business at 235 East 42nd Street, New York, New York 10017.   Pfizer Inc. is the holder of New Drug Application ("NDA") No. 207103 for the manufacture and sale of palbociclib capsules, 75 mg, 100 mg, and 125 mg, which has been approved by the FDA.

4.      Plaintiff Warner-Lambert Company LLC is a limited liability company organized and existing under the laws of the State of Delaware, and having a place of business at 235 East 42nd Street, New York, New York 10017.

5.      Plaintiff PF PRISM IMB B.V. is a private limited company (*besloten venootschap*) organized under the law of the Netherlands, having its registered seat in Rotterdam, the Netherlands, and having its business address at Rivium Westlaan 142, 2909 LD, Capelle aan den IJessel, the Netherlands.

6.      Upon information and belief, defendant Qilu Pharmaceutical Co., Ltd. is a company organized and existing under the laws of the People's Republic of China with its principal place of business at No. 243, Gong Ye Bei Road, Jinan, 250100, P.R. China.  Upon information and belief, Qilu Pharmaceutical Co., Ltd. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs through various operating subsidiaries, including Qilu Pharma, Inc.

7.      Upon information and belief, defendant Qilu Pharma, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business at 101 Lindenwood Drive, Suite 225, Malvern, Pennsylvania 19355.  Upon information

and belief, Qilu Pharma, Inc. is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical drugs for the U.S. market.

8.      Upon information and belief, Qilu Pharma, Inc. is a wholly owned subsidiary of Qilu Pharmaceutical Co., Ltd.

9.      Upon information and belief, Qilu Pharma, Inc. is the designated U.S. agent for Qilu Pharmaceutical Co., Ltd. in connection with Qilu's ANDA.

10.     Upon information and belief, Qilu Pharmaceutical Co., Ltd. and Qilu Pharma, Inc. acted in concert to prepare and submit Qilu's ANDA.

## JURISDICTION

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201 and 2202.

12.     Qilu Pharmaceutical Co., Ltd. is subject to personal jurisdiction in Delaware because, among other things, Qilu Pharmaceutical Co., Ltd., itself and through its wholly-owned subsidiary Qilu Pharma, Inc., has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Upon information and belief, Qilu Pharmaceutical Co., Ltd., itself and through its subsidiary Qilu Pharma, Inc., develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware.  In addition, Qilu Pharmaceutical Co., Ltd. is subject to personal jurisdiction in Delaware because, upon information and belief, it controls Qilu Pharma, Inc. and therefore the activities of Qilu Pharma, Inc. in this jurisdiction are attributed to Qilu Pharmaceutical Co., Ltd.

13.    Qilu Pharma, Inc. is subject to personal jurisdiction in Delaware because, among other things, it has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here.  Upon information and belief, Qilu Pharma, Inc. develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Pfizer's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

14.    Qilu has previously used the process contemplated by the Drug Price Competition and Patent Term Restoration Act of 1984, 21 U.S.C. § 355(j) (the "Hatch-Waxman Act"), to challenge branded pharmaceutical companies' patents by filing a certification of the type described in Section 505(j)(2)(A)(vii)(IV) of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 355(j)(2)(A)(vii)(IV), serving a notice letter on those companies, and engaging in patent litigation arising from the process contemplated by the Hatch-Waxman Act.

15.    Upon information and belief, Qilu, with knowledge of the Hatch-Waxman Act process, directed Qilu's Notice Letter to, *inter alia*, Pfizer Inc., an entity incorporated in Delaware, and alleged in Qilu's Notice Letter that Pfizer's '730 patent is invalid.  Upon information and belief, Qilu knowingly and deliberately challenged Pfizer's patent rights, and knew when it did so that it was triggering the forty-five day period for Pfizer to bring an action for patent infringement under the Hatch-Waxman Act.

16.    Because Pfizer Inc. is incorporated in Delaware, Pfizer Inc. suffers injury and consequences from Qilu's filing of Qilu's ANDA challenging Pfizer's patent rights in Delaware. Upon information and belief, Qilu knew that it was deliberately challenging the patent rights of a Delaware entity and seeking to invalidate intellectual property held in Delaware.  Qilu has been a

litigant in connection with other infringement actions under the Hatch-Waxman Act, and reasonably should have anticipated that by sending Qilu's Notice Letter to Pfizer Inc., a Delaware corporation, it would be sued in Delaware for patent infringement.

17. Upon information and belief, if Qilu's ANDA is approved, Qilu will directly or indirectly manufacture, market, sell, and/or distribute Qilu's ANDA Products within the United States, including in Delaware, consistent with Qilu's practices for the marketing and distribution of other generic pharmaceutical products. Upon information and belief, Qilu regularly does business in Delaware, and its practices with other generic pharmaceutical products have involved placing those products into the stream of commerce for distribution throughout the United States, including in Delaware. Upon information and belief, Qilu's generic pharmaceutical products are used and/or consumed within and throughout the United States, including in Delaware. Upon information and belief, Qilu's ANDA Products will be prescribed by physicians practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities would have a substantial effect within Delaware and would constitute infringement of Pfizer's patent in the event that Qilu's ANDA Products are approved before the patent expires.

18. Upon information and belief, Qilu derives substantial revenue from generic pharmaceutical products that are used and/or consumed within Delaware, and which are manufactured by Qilu and/or for which Qilu Pharmaceutical Co., Ltd. and/or Qilu Pharma, Inc. is the named applicant on approved ANDAs. Upon information and belief, various products for which Qilu Pharmaceuticals Co., Ltd. and/or Qilu Pharma, Inc. is the named applicant on approved ANDAs are available at retail pharmacies in Delaware.

**FACTUAL BACKGROUND**

19.    IBRANCE®, which contains palbociclib, is approved for the treatment of HR-positive, HER2-negative advanced or metastatic breast cancer.

20.    Upon information and belief, Qilu's ANDA Products are a generic version of IBRANCE®.

21.    Qilu's Notice Letter purported to include an "Offer of Confidential Access" to Pfizer to Qilu's ANDA.  The offer, however, was subject to various unreasonably restrictive conditions.  Rather than engage in protracted negotiations regarding access to Qilu's confidential information prior to filing of a complaint for infringement of the '730 patent, and in order to better align the schedule in this action with that of other already-pending actions, Pfizer and Qilu agreed through counsel to proceed to file this Complaint and handle the production of Qilu's confidential information in post-filing discovery.

22.    Plaintiffs are filing this Complaint within forty-five days of receipt of Qilu's Notice Letter.

**COUNT I – INFRINGEMENT OF THE '730 PATENT**

23.    Pfizer incorporates each of the preceding paragraphs 1–22 as if fully set forth herein.

24.    The inventors of the '730 patent are Brian Patrick Chekal and Nathan D. Ide.

25.    The '730 patent, entitled "Solid Forms of a Selective Cdk4/6 Inhibitor" (attached as Exhibit A), was duly and legally issued on July 28, 2020.

26.    Pfizer is the owner and assignee of the '730 patent.

27.     IBRANCE® is covered by one or more claims of the '730 patent, which has been listed in connection with IBRANCE® in the FDA's publication Approved Drug Products with Therapeutic Equivalence Evaluations (commonly known as "the Orange Book").

28.     In Qilu's Notice Letter, Qilu notified Pfizer of the submission of Qilu's ANDA to the FDA.  The purpose of this submission was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Qilu's ANDA Products prior to the expiration of the '730 patent.

29.     In Qilu's Notice Letter, Qilu also notified Pfizer that, as part of its ANDA, Qilu had filed a certification of the type described in Section 505(j)(2)(B)(iv) of the FDCA, 21 U.S.C. § 355(j)(2)(B)(iv), with respect to the '730 patent.  Upon information and belief, Qilu submitted its ANDA to the FDA containing certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) asserting that the '730 patent is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Products.

30.     Upon information and belief, Qilu's ANDA Products and the use of Qilu's ANDA Products are covered by one or more claims of the '730 patent, either literally or under the doctrine of equivalents.

31.     As an example, claim 1 of the '730 patent recites:

> A crystalline free base of 6-acetyl-8-cyclopentyl-5-methyl-2-(5-piperazin-1-yl-pyridin-2-ylamino)-8H-pyrido[2,3-d]pyrimidin-7-one, having a powder X-ray diffraction pattern comprising peaks at diffraction angles (2θ) of 8.0±0.2, 10.1±0.2 and 11.5±0.2 and a primary particle size distribution characterized by a D90 value of from about 30 μm to about 65 μm.

32.     Upon information and belief, Qilu's ANDA Products infringe claim 1 of the '730 patent, literally or under the doctrine of equivalents.

33.     As an example, Claim 7 of the '730 patent recites:

A crystalline free base of 6-acetyl-8-cyclopentyl-5-methyl-2-(5-piperazin-1-yl-pyridin-2-ylamino)-8H-pyrido[2,3-d]pyrimidin-7-one, having a powder X-ray diffraction pattern comprising peaks at diffraction angles (2θ) of 8.0±0.2, 10.1±0.2 and 11.5±0.2 and a volume mean diameter characterized by a D[4,3] value of from about 15 μm to about 40 μm.

34.   Upon information and belief, Qilu's ANDA Products infringe claim 7 of the '730 patent, literally or under the doctrine of equivalents.

35.   As an example, Claim 15 of the '730 patent recites:

A crystalline free base of 6-acetyl-8-cyclopentyl-5-methyl-2-(5-piperazin-1-yl-pyridin-2-ylamino)-8H-pyrido[2,3-d]pyrimidin-7-one, having a powder X-ray diffraction pattern comprising peaks at diffraction angles (2θ) of 8.0±0.2, 10.1±0.2 and 11.5±0.2 and a volume mean diameter characterized by a D[4,3] value of from about 15 μm to about 30 μm.

36.   Upon information and belief, Qilu's ANDA Products infringe claim 15 of the '730 patent, literally or under the doctrine of equivalents.

37.   Qilu's submission of Qilu's ANDA for the purpose of obtaining approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Products before the expiration of the '730 patent was an act of infringement of the '730 patent under 35 U.S.C. § 271(e)(2)(A).

38.   Upon information and belief, Qilu will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Products immediately and imminently upon approval of its ANDA.

39.   Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Products would infringe one or more claims of the '730 patent, either literally or under the doctrine of equivalents.

8

40.     Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Products in accordance with, and as directed by, their proposed product labeling would infringe one or more claims of the '730 patent.

41.     Upon information and belief, Qilu plans and intends to, and will, actively induce infringement of the '730 patent when Qilu's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval. Qilu's activities will be done with knowledge of the '730 patent and specific intent to infringe that patent.

42.     Upon information and belief, Qilu knows that Qilu's ANDA Products and their proposed labeling are especially made or adapted for use in infringing the '730 patent, that Qilu's ANDA Products are not staple articles or commodities of commerce, and that Qilu's ANDA Products and their proposed labeling are not suitable for substantial noninfringing use. Upon information and belief, Qilu plans and intends to, and will, contribute to infringement of the '730 patent immediately and imminently upon approval of Qilu's ANDA.

43.     Notwithstanding Qilu's knowledge of the claims of the '730 patent, Qilu has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Qilu's ANDA Products with their product labeling following FDA approval of Qilu's ANDA prior to the expiration of the '730 patent.

44.     The foregoing actions by Qilu constitute and/or will constitute infringement of the '730 patent; active inducement of infringement of the '730 patent; and contribution to the infringement by others of the '730 patent.

45.     Upon information and belief, Qilu has acted with full knowledge of the '730 patent and without a reasonable basis for believing that it would not be liable for infringement of the '730

patent; active inducement of infringement of the '730 patent; and/or contribution to the infringement by others of the '730 patent.

46.    Pfizer will be substantially and irreparably harmed by infringement of the '730 patent.

47.    Unless Qilu is enjoined from infringing the '730 patent, actively inducing infringement of the '730 patent, and contributing to the infringement by others of the '730 patent, Pfizer will suffer irreparable injury.  Pfizer has no adequate remedy at law.

<u>**COUNT II – DECLARATORY JUDGMENT OF INFRINGEMENT**</u>
<u>**OF THE '730 PATENT**</u>

48.    Pfizer incorporates each of the preceding paragraphs 1–47 as if fully set forth herein.

49.    The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Pfizer on one hand and Qilu on the other regarding Qilu's infringement, active inducement of infringement, and contribution to the infringement by others of the '730 patent, and/or the validity of the '730 patent.

50.    In Qilu's Notice Letter, Qilu notified Pfizer of the submission of Qilu's ANDA to the FDA.  The purpose of this submission was to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale and/or importation of Qilu's ANDA Products prior to the expiration of the '730 patent.

51.    In Qilu's Notice Letter, Qilu also notified Pfizer that, as part of its ANDA, Qilu had filed certifications of the type described in Section 505(j)(2)(B)(iv) of the FDCA, 21 U.S.C. § 355(j)(2)(B)(iv), with respect to the '730 patent.  Upon information and belief, Qilu submitted its ANDA to the FDA containing certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV)

asserting that the '730 patent is invalid, unenforceable, and/or will not be infringed by the manufacture, use, offer for sale, sale, and/or importation of Qilu's ANDA Products.

52.    Upon information and belief, Qilu's ANDA Products and the use of Qilu's ANDA Products are covered by one or more claims of the '730 patent.

53.    As an example, claim 1 of the '730 patent recites:

> A crystalline free base of 6-acetyl-8-cyclopentyl-5-methyl-2-(5-piperazin-1-yl-pyridin-2-ylamino)-8H-pyrido[2,3-d]pyrimidin-7-one, having a powder X-ray diffraction pattern comprising peaks at diffraction angles ($2\theta$) of $8.0\pm0.2$, $10.1\pm0.2$ and $11.5\pm0.2$ and a primary particle size distribution characterized by a D90 value of from about 30 μm to about 65 μm.

54.    Upon information and belief, Qilu's ANDA Products infringe claim 1 of the '730 patent, literally or under the doctrine of equivalents.

55.    As an example, Claim 7 of the '730 patent recites:

> A crystalline free base of 6-acetyl-8-cyclopentyl-5-methyl-2-(5-piperazin-1-yl-pyridin-2-ylamino)-8H-pyrido[2,3-d]pyrimidin-7-one, having a powder X-ray diffraction pattern comprising peaks at diffraction angles ($2\theta$) of $8.0\pm0.2$, $10.1\pm0.2$ and $11.5\pm0.2$ and a volume mean diameter characterized by a D[4,3] value of from about 15 μm to about 40 μm.

56.    Upon information and belief, Qilu's ANDA Products infringe claim 7 of the '730 patent, literally or under the doctrine of equivalents.

57.    As an example, Claim 15 of the '730 patent recites:

> A crystalline free base of 6-acetyl-8-cyclopentyl-5-methyl-2-(5-piperazin-1-yl-pyridin-2-ylamino)-8H-pyrido[2,3-d]pyrimidin-7-one, having a powder X-ray diffraction pattern comprising peaks at diffraction angles ($2\theta$) of $8.0\pm0.2$, $10.1\pm0.2$ and $11.5\pm0.2$ and a volume mean diameter characterized by a D[4,3] value of from about 15 μm to about 30 μm.

58.    Upon information and belief, Qilu's ANDA Products infringe claim 15 of the '730 patent, literally or under the doctrine of equivalents.

59. Upon information and belief, Qilu will engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Qilu's ANDA Products immediately and imminently upon approval of its ANDA.

60. Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Products would infringe one or more claims of the '730 patent.

61. Upon information and belief, the manufacture, use, sale, offer for sale, or importation of Qilu's ANDA Products in accordance with, and as directed by, their proposed labeling would infringe one or more claims of the '730 patent.

62. Upon information and belief, Qilu plans and intends to, and will, actively induce infringement of the '730 patent when Qilu's ANDA is approved, and plans and intends to, and will, do so immediately and imminently upon approval. Qilu's activities will be done with knowledge of the '730 patent and specific intent to infringe that patent.

63. Upon information and belief, Qilu knows that Qilu's ANDA Products and their proposed labeling are especially made or adapted for use in infringing the '730 patent, that Qilu's ANDA Products are not staple articles or commodities of commerce, and that Qilu's ANDA Products and their proposed labeling are not suitable for substantial noninfringing use. Upon information and belief, Qilu plans and intends to, and will, contribute to infringement of the '730 patent immediately and imminently upon approval of Qilu's ANDA.

64. Notwithstanding Qilu's knowledge of the claims of the '730 patent, Qilu has continued to assert its intent to manufacture, offer for sale, sell, distribute, and/or import Qilu's ANDA Products with their proposed labeling following FDA approval of Qilu's ANDA prior to the expiration of the '730 patent.

65.     The foregoing actions by Qilu constitute and/or will constitute infringement of the '730 patent; active inducement of infringement of the '730 patent; and contribution to the infringement by others of the '730 patent.

66.     Upon information and belief, Qilu has acted with full knowledge of the '730 patent and without a reasonable basis for believing that it would not be liable for infringement of the '730 patent; active inducement of infringement of the '730 patent; and/or contribution to the infringement by others of the '730 patent.

67.     Pfizer will be substantially and irreparably damaged by infringement of the '730 patent.

68.     The Court should declare that the commercial manufacture, use, sale, offer for sale and/or importation of Qilu's ANDA Products with their proposed labeling, or any other Qilu drug product that is covered by or whose use is covered by the '730 patent, will infringe, induce infringement of, and contribute to the infringement by others of the '730 patent, and that the claims of the '730 patent are not invalid.

## PRAYER FOR RELIEF

WHEREFORE, Pfizer requests the following relief:

(a)     A judgment that the '730 patent has been infringed under 35 U.S.C. § 271(e)(2) by Qilu's submission to the FDA of Qilu's ANDA;

(b)     A judgment ordering that the effective date of any FDA approval of commercial manufacture, use, or sale of Qilu's ANDA Products, or any other drug product that infringes or the use of which infringes the '730 patent, be not earlier than the expiration date of the '730 patent, inclusive of any extension(s) and additional period(s) of exclusivity;

(c)     A preliminary and permanent injunction enjoining Qilu, and all persons acting in concert with Qilu, from the commercial manufacture, use, sale, offer for sale, or importation into the United States of Qilu's ANDA Products, or any other drug product covered by or whose use is covered by the '730 patent, prior to the expiration of that patent, inclusive of any extension(s) and additional period(s) of exclusivity;

(d)     A judgment declaring that the commercial manufacture, use, sale, offer for sale or importation of Qilu's ANDA Products, or any other drug product which is covered by or whose use is covered by the '730 patent, prior to the expiration of that patent, will infringe, induce the infringement of, and contribute to the infringement by others of, said patent;

(e)     A declaration that this is an exceptional case and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

(f)     Costs and expenses in this action; and

(g)     Such further and other relief as this Court may deem just and proper.

14

Morris, Nichols, Arsht & Tunnell LLP

*/s/ Megan E. Dellinger*

_____
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

OF COUNSEL:

David I. Berl
Christopher J. Mandernach
Seth R. Bowers
Michael Xun Liu
Kevin Hoagland-Hanson
Andrew Hoffman
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000

June 29, 2021

*Attorneys for Plaintiffs*

15